Burks, J.,
delivered the opinion of the court.
The petitioners in these cases are bar-room liquor dealers within the corporate limits of the city of Richmond, duly licensed as such by the hustings court of said city, according to the provisions of the act of the general assembly, entitled “an act imposing a tax and prescribing the mode of collecting the same on the privilege of selling wine, ardent spirits or malt liquors within the limits of the commonwealth for the support of government, and to pay the interest on the public debt,” approved March 30, 1877. (See Acts of 1876-77, ch. 253, p. 245, et seq.)
The respondent, the Honorable A. B. Guigon, the judge of the said hustings court, upon rules made against the petitioners, duly executed more than ten days before the return day, was proceeding to revoke their licenses when they applied to this court for writs of prohibition to restrain him. The question is, whether this proceeding of the judge is in excess of his jurisdiction. This is the extent of our inquiry. We dismiss at the threshold all consideration of the sufficiency or insufficiency of the alleged cause of revocation. If he has jurisdiction of the proceeding which he instituted, however erroneous or mistaken his judgment may be, the remedy by prohibition does not lie. The writ of prohibition can never be made to do the office of a writ of error. It is a preventive, not a corrective remedy. It is intended to confine inferior courts within the just limits of their jurisdiction, not to correct errors in proceedings of which they have no cognizance.
*In Ellyson & als., ex parte, 20 Gratt. 10, 23, the question was, whether a county or corporation court had jurisdiction and authority to decide, in the case of a contested election, that there had been no valid election, and thereby to create a vacancy to be filled in the manner provided by law. Judge Joynes, delivering the opinion of the court, said: “If a county or corporation court has such jurisdiction in any case of a contested election, the petitioners have no right to a writ of prohibition. We cannot inquire whether the corporation court of Richmond had or had not such jurisdiction in a particular case. That would be to convert a writ of prohibition, which proceeds on excess of jurisdiction, into a writ of error, which proceeds upon an error in the exercise of jurisdiction.”
So, in the cases before us, we are not called upon to decide whether the proceeding of the respondent, on the evidence before him, would be a proper exercise of the power with which he is invested, but whether he has any such power at all. _ If he has the power, we might be of opinion *581 that the proposed exercise of it by him would be error, but we could not correct the error by writ of prohibition.
It is very certain that the power is not conferred by the act under which the licenses were granted. If it exists at all, it is by virtue of some other statute.
Section 106, chapter 206, of the acts of 1874-75, is in these words: “Upon the motion of the attorney for the commonwealth for the county, city or town, or of any other person, after ten days’ notice to any person or firm licensed to sell liquors or any other thing, the granting of whose license was based upon the certificate of a court, the court which granted the certificate may revoke the license.”
If this section is still in force, it cannot be doubted that the hustings court of the city of Richmond is invested *with the jurisdiction claimed for it in these cases. The terms are ample for the purpose. In these cases, the licenses were based on the certificate of the hustings court made as required by the second section of the act aforesaid of March 30th, 1877, and the proceeding to revoke is by the court which granted the licenses, and after ten days’ notice duly given.
As early as the year 1831, the general assembly initiated the rule, which became the settled policy of the state, of requiring all persons obtaining license to retail ardent spirits, to get from the court granting the license a certificate as to character, and also as to convenience of the place of sale, and giving to the courts the power to revoke the license. Numerous acts of this description have been passed from time to time. In some of the earlier, the power of revocation was limited by the terms, “upon good cause shown.” In others, the court was empowered to revoke “if it saw cause to do so”; and finally all words of limitation were dropped, and the power was committed to the discretion of the court in the terms of the section aforesaid of the act approved March 16, 1875, (Acts 1874-75, p. 244), which corresponds with like sections in the Acts of 1870-71, 1871-72.* It is believed there has been no time since the year 1831 when the county or corporation courts, or both, were not clothed -with this power, and we think they still have it, unless the section here-inbefore set out, (section 106 of the act approved March 16, 1875,) has been repealed. It certainly has not been expressly repealed. If repealed at all it has been by implication. Has it been so repealed?
*lt is difficult to conceive of any good reason why the settled policy of the state on this subject should have been changed at all, and it is most remarkable, if such a radical change has been made, that the evidence of it rests on no surer foundation than that of presumption.
The repeal of a statute by implication is not favored by the courts, for ordinarily where a repeal is intended by the legislature it is declared in express terms. The presumption is always against the intention to repeal where express terms are not used. Hence the rule, as laid down by Chief Justice Marshall, that a repeal by implication ought not to be presumed unless from th.e repugnance of the provisions the inference be necessary and unavoidable, (Harford v. United States, 8 Cranch, 109); and the like rule by Judge Story, who, in considering whether a later statute repeals a former one, says that the inquiry is, whether it (the former statute) is repealed by necessary implication. We say by necessary implication, for it is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new laws and those of the old; and even then the old law is repealed by implication only pro tanto to the extent of the repug-nancy. Wood v. United States, 16 Peters, 342, 363.
To justify the presumption of intention to repeal one statute by another, the two statutes must be irreconcilable. McCool v. Smith, 1 Black. U. S. R. 459, 470, and cases there cited; Sedgwick on Stat. and Con. Law, 98, and notes; Pott. Dwarr. on Stat. and Con. 154, and notes.
There is no incompatibility between the section referred to and the act of March 30, 1877. Full effect may be given to each without diminishing the force of either. *The two may well stand together, and if they may, they must so stand. Indeed, there is nothing to warrant the conclusion that any repeal of this section was intended. It is not to be supposed that so important a provision of the law, in force in some form or other for more than forty years, would be repealed in any I other way than by the most direct terms,
I The general clause concluding the act of j March 30th, 1877, that “all acts and parts | of acts inconsistent with this act are hereby ; repealed,” is usual where the act of which it forms a part covers the subject matter of other acts or parts of other acts, and the I intention is not to repeal the latter wholly, but only so far as they are inconsistent with the last act. It indicates a partial repeal I only and an intention to preserve portions of former acts relative to the same subject matter. Such a clause, says Mr. Justice Strong, is an express limitation of the extent to which it was intended former acts should cease to be operative: namely, only so far as they are inconsistent with the new act. It is quite inadmissible to engraft upon this express declaration of legislative intent an implication of more extensive repeal. Henderson’s Tobacco, 11 Wall. U. S. R. 652, 656. See, to the same effect, *582 Elrod v. Gillilard, Howell & Co., 27 Ga. R. 467, 468, 469; Lewis, governor, v. Stout & others, 22 Wis. R. 234, 236; English v. Oliver, collector, 28 Ark. R. 317, 326.
There may be acts plainly intended to embrace and include the whole legislation on the subjects to which they refer, and to be substituted wholly for former acts on the same subjects. In such cases, the provisions of the former laws on the same subject, although not expressly embraced in the subsequent acts, are repealed by implication. Such were the cases of Fox’s adrh’rs v. Commonwealth, 16 Gratt. 1; and United States v. Tynen, 11 Wall. U. S. R. 88.
*The cases before us, however, do not fall within the rule of these decisions. The object of the act of March 30, 1877, as. its title indicates, was not only to impose a tax on the privilege of selling wine, •ardent spirits or malt liquors, but also to prescribe the mode of collecting the tax. Besides a specific tax, the act imposes a further tax .on sales, an account of which is kept by means of what is called the “Moffett register,” an agency or instrumentality never before employed in the collection of the revenue in this state. The provisions of the act are mostly new, and relate chiefly to the establishment and regulation of this'new agency, and were never intended to supersede existing laws except so far as such laws are plainly inconsistent with the provisions .of the new act. The act of March 16, 1875, of which section 106, alleged to be- repealed by the act of March 30, 1877, forms a part, is a general law “prescribing general provisions in relation to commissioners of the revenue, and the assessment of taxes on persons, property, income, licenses, &c.” (See the title to the act.) This act has never been repealed, but continues for the most part in force. This is recognized by subsequent amendments of several sections after the passage of the act of March 30, 1877. See the amendments in acts of 1876-77, pp. 300, 301, 302.
The appeal allowed by the second section of the last named act, the forfeiture of license imposed by the tenth section, and the provisions of the seventeenth section, requiring the act to be given in charge to the grand jury, and the commissioner of the revenue and the treasurer of the county or corporation to be sent before the grand jury, are perfectly consistent with the supervision given by the 106th section of the former act, and with the continued exercise of the power thereby conferred. The appeal allowed is confined to the county courts. No appeal is allowed from the action of the corporation ^courts.
Whether, if on appeal from the county court to the circuit court, the judgment of the county court be reversed and a license granted by the circuit court, the proceeding to revoke such license should be in the latter court, is a question which does not arise in the cases before us, and therefore need not be decided.
The absolute forfeiture imposed by the tenth _ section, on conviction for a second violation of the provisions of the fifth section, is the mandate of the law, while the exercise of the power of revocation in other cases is an additional safe-guard left to the sound discretion of the court.
Substantially the same certificate as to character and convenience of place is required by the first section of the act as under former acts, and the report required to. be made by the commissioner of the revenue to the court under section eight, rather favors the idea that it was intended to aid the court in the proper exercise of the power of revoking the license. For we do not concur in the view presented by the learned counsel for the petitioners, that the report is intended merely as a basis for presentments and indictments by the grand jury. The report is not required to be sent to the grand jury, but whatever the report may be, or whether any be made or not, it is made the duty not only of the county and corporation courts, but also of the circuit court to give the act in charge to the grand jury at every regular grand jury term of their respective courts, and also to send before the jury the commissioner of the revenue and the treasurer of the county or corporation.
Upon the whole matter, we are of opinion that the respondent, as judge of the hustings court of the city‘of Richmond, is invested by law with the jurisdiction claimed by him in his answers to the rules in these cases, that he has not exceeded his jurisdiction in the proceedings *complained of in the petitions, and that the rules awarded against him should be discharged at the costs of the petitioners respectively.*
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the petition filgd by the said Mortimer Hogan and the affidavits therewith, the rule awarded on said petition against the said A. B. Guigon, the answer of said Guigon to said rule, the exhibits with said petition and answer, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said A. B. Guigon, as judge of the hustings court of the city of Richmond, is invested by law with jurisdiction to revoke the license of the said Mortimer Hogan in said petition mentioned; that the said A. B. Guigon, as. judge of the said hustings court, has not exceeded his juris *583 diction in the proceedings complained of in said petition, and that the rule aforesaid awarded against him should be discharged. It is therefore considered and ordered, that the said rule be discharged, and that the petitioner, the said Mortimer Hogan, pay to the respondent, the said A. B. Guigon, his costs by him about his defence in this behalf expended.
*582 *N0TE by the Judge. — The following list of cases in prohibition, decided by the general court' and the court of appeals, is given for convenience of reference:
Miller v. Marshall, 1 Va. Cas. 158; Hutson v. Lowry, 2 Va. Cas. 42; Jackson v. Maxwell, 5 Rand. 636; Mayo v. James, 12 Gratt. 17; Warwick & Barksdale v. Mayo, 15 Gratt. 528; West v. Ferguson & others, 16 Gratt. 270; Ellyson & others, ex parte, 20 Gratt. 10; Supervisors v. Gorrell, 20 Gratt. 454; French v. Noell, 22 Gratt. 454; Burch v. Hardwicke, 23 Gratt. 51; Supervisors v. Wingfield, Judge, 27 Gratt. 329.
*583 Writ of prohibition denied.

See Acls 1830-31, ch. 59, § 1, p. 130; Acts J 831-32, ch. 24, § 1, p. 24; Acts 1839-40, ch. 1, § 5, p. 6; Code of 1849. ch. 38, §§ 14, 19; Acts 1859-69, ch. 2, §§ 32. 37; Code of 1860, ch. 38, §§ 32, 37; Acts 1870-71, ch. 72, § 166, p. 118; Acts 1871-72. ch. 159, § 164, p. 201; Code of 1873. ch. 34, § 21, p. 325; Acts 1874, ch. 240, § 105, p. 313; Acts 1874-75, ch. 206, §§ 89, 106, p. 215.