ELISHA PORTER v. D. T. DURHAM.

*Processioning Land—The Code,* §1924.

1. The purpose of the act concerning the processioning of land is to establish the boundaries thereof, and a complete survey, with plat, certificate, &c., is indispensable to the fulfillment of the statutory requirements.

2. Where a surveyor was prevented by an adjoining proprietor from running the disputed lines, and made report thereof to the clerk of the court, who appointed five freeholders to establish the same and they failed to agree, and thereupon others were appointed whose report showed the claims of the respective parties, but failed to comply with the statute in making a plat and certificate, &c.; *Held,* that the proceeding must be quashed. The surveyor should have resumed the work, adopted the lines settled upon by the co-operating freeholders, and completed the survey.

(*Carpenter* v. *Whitworth,* 3 Ired., 204; *Miller* v. *Heart,* 4 Ired., 23; *Matthews* v. *Matthews, Ib.,* 155; *Hoyle* v. *Wilson,* 7 Ired., 466; *Wilson* v. *Shufford,* 3 Mur., 504, cited and approved).

APPEAL from an order made at Fall Term, 1883, of PENDER Superior Court, by *Philips, J.*

This was a proceeding under the act for "Processioning Land," in which the plaintiff gave ten days' notice to persons owning lands adjoining his own. The surveyor made a report to the clerk of the court, in which he stated, among other things, that in running one of the disputed lines between the plaintiff and the defendant, he was proceeding to establish a corner at a certain place, when the defendant objected, saying that the surveyor should run the line further on to another point, which the surveyor declined to do, upon the ground that he was running by the calls in a deed. The report sets out in detail the claims of

the respective parties, but the same is not necessary to an under-standing of the points decided upon this appeal.

The clerk thereupon issued an order appointing five freehold-ers to meet said surveyor and complete the survey of the dis-puted lines, and make report of same. They met in pursuance of the order and proceeded to establish the lines, and subse-quently reported to the clerk that they were unable to agree, and asked to be discharged from the further consideration of the matter.

The clerk then declared the proceedings null and void by reason of the failure of the jury to agree, and issued another order directing the sheriff to summon another jury to view the premises and to establish the lines. They met and proceeded to discharge the duty assigned, and made a report thereof to the clerk, which was confirmed, no exceptions being made.

Subsequently the defendant applied for a writ of *certiorari*, which was granted, and the proceeding brought to the superior court, when, at fall term, 1879, the death of the defendant was suggested, and his heirs-at-law made parties.

The cause coming on to be heard, the defendant filed excep-tions, insisting there is error in the record and proceedings:

1. Because the report of the first jury does not show that the surveyor was present when the lines were run or passed upon by the freeholders.

2. The surveyor's report contains no plat of the land proces-sioned, nor certificate as required by law.

3. Nor does it set out all the facts in reference to the objec-tions made by the defendant, so as to show the nature of the dispute; nor are the descriptions of the land given, as contained in the deeds of parties.

4. That plaintiff's tract is a small part of a large body of land owned by defendant, which was cut off therefrom and conveyed by the defendant to one Hines (giving in detail the courses, &c.).

5. After the first jury filed their report stating they could not agree (October 4th, 1875), more than twelve months elapsed

before any further action was taken, and there is no evidence of the appointment of a second jury by the clerk, and no authority in law to appoint one—the original proceedings having been declared null and void and the jury discharged; the next proceeding should therefore have been begun *de novo*, and the map, &c., used in the former proceeding were inapplicable to the second.

Judgment was rendered for the plaintiff, affirming the judgment of the clerk and the report of the jury of freeholders establishing the lines, and the defendant appealed.

*Mr. Bruce Williams*, for plaintiff.
*Mr. DuBrutz Cutlar*, for defendant.

SMITH, C. J.   It was remarked by GASTON J., delivering the opinion of the court in *Carpenter* v. *Whitworth*, 3 Ired., 204, that the "practice of processioning lands, though recognized in our statute for more than a century, has for many years been so generally disused, that few of the profession or of the bench can claim to be familiar with the law respecting it."   The same observation will bear repetition after the lapse of forty years, since but little aid can be derived from the few subsequent cases to be found in the reports in the interpretation of its provisions.   Inasmuch as great strictness is required in following its directions in order to obtain practical and effectual results, the procedure prescribed by the statute has almost become obsolete.

The proceeding before us, commenced in 1875, terminated in a report made to the clerk of the superior court, by whom it was confirmed the following year.   It was removed by *certiorari* in 1879 to the superior court, and heard by the judge upon exceptions taken by the defendant, and from the decision overruling them and affirming the action of the clerk, the case is brought to this court.

The processioner's report of his effort to run the boundaries of the plaintiff's land and the obstruction offered by the defend-

ant to his survey of lines dividing their respective tracts, is, in our opinion, a substantial compliance with the requirements of the act, and is not obnoxious to the defendant's objections.    He could only prosecute his work up to the disputed line, and when arrested, make report of what he has done, stating all the circumstances of the case, in order to the further steps prescribed for an authoritative location, and the settlement of the contro-. versy between the contiguous proprietors.

The clerk, substituted for the county commissioners, the immediate successors of the former county court, by the act of 1874–'75, ch. 40, and invested with the same powers, thereupon proceeded to appoint five freeholders pursuant to· the directions of the act (Rev. Code, ch. 88, §6), who, after an ineffectual effort to agree upon a line, made return to the clerk and were discharged and others appointed in their place.    These, with the processioner, met at the disputed boundary, as a jury of view, inspected the locality and the natural objects called for in the deed, heard evidence, ascertained and established the line between the contestants, and made return thereof, setting out all the material facts in reference to the dispute, the claims of each, and the grounds of their own conclusion.    This report seems to us to be sufficient to show the matter in controversy and the claims of the respective parties as to the proper mode of running the line, according to cases in our reports.    *Miller* v. *Heart*, 4 Ired., 23; *Matthews* v. *Matthews, Ib.,* 155; *Hoyle* v. *Wilson,* 7 Ired., 166.

The cases heretofore in this court have been deemed defective by reason of the omission to set out the facts explanatory of the controversy and of the conflicting claims of the proprietors, "which," says Judge HENDERSON in *Wilson* v. *Shufford*, 3 Mur., 504, " we consider as the declaration or rather the pleadings of the parties,. setting forth their respective claims," since it is by comparing the report of the processioner, with the report of the freeholders that the court can see which party prevailed in the claim, and thereby the finding may be reviewed.

In these aspects of the case, the proceeding seems to have been conducted conformably to the act, but it falls short of its full

requirements.  The purpose is to assure and fix the boundaries
of the land of the plaintiff, and if, after notice, no interruption
had come from any adjoining proprietor, the survey would have
been around the entire tract. ˙ The processioner or surveyor (for
now all surveyors of the county are made processioners by stat-
ute, acts 1872–'73, ch. 57) is required *"to make a plat of each
tract of land processioned, and also a certificate of the same, which
certificate shall contain the claimant's name, the quantity of acres,
the corners, length and course of each line"* (section 6), and these
should be embodied in his report.  A complete survey is indis-
pensable to the fulfillment of these conditions, and is essential to
secure the practical benefits of the law.

In section seven it is declared that after two processionings
the person whose lands are thus run *"shall be deemed and ad-
judged to be the sole owner,"* and the evidence is preserved by
being recorded *"by the clerk in a well-bound book kept for that
purpose."*  Section 5.

The statute makes provision for an interrupted survey; direct-
ing how disputed lines shall be ascertained; and subjecting the
action of the freeholders to a review for the correction of errors.
But when the lines are established, the mandate operates on the
processioner to go on with his survey and complete it, as if there
had been no obstacle in his way.  This is, in our opinion, the
plain meaning of the law, and this construction is necessary to
the production of any useful, practical result.

The processioner's report stopping at the interruption of his
survey, and that of the freeholder's conforming to it, give no
complete enclosing boundary, but running away in a succession
of lines and ending at the termination of the last in dispute, never
returns to the starting point, ascertaining no definite area or loca-
tion for the plaintiff's land, so that the record, thus incomplete,
is useless to him.                          ,

To be effective, the processioner should have resumed his sur-
vey, adopting the lines established for his guidance by the co-
operating freeholders, and continued on until the whole boundary,

the undisputed as well as the disputed parts, was run so that his plat and certificate would embrace all the requisites of the act in like manner as if he had not been obstructed in his work.

This is a fatal defect in the proceeding, and it should have been quashed. There is error in the ruling of the court, and it is reversed and judgment will be here entered quashing it.

Error. Reversed.