341 F.2d 217
 BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT,
HANDLERS, EXPRESS AND STATION EMPLOYEES et al., Appellants,
v.
SOUTHERN RAILWAY COMPANY and Central of Georgia Railway
Company, Appellees.
 No. 21023.
 United States Court of Appeals Fifth Circuit.
 Feb. 2, 1965.
 
 James L. Highshaw, Jr., William G. Mahoney, Washington, D.C., Joseph Jacobs, Jacobs & Jacobs, Atlanta, Ga., Edward J. Hickey, Jr., Mulholland, Hickey & Lyman, Washington, D.C. (Jacobs & Jacobs, Atlanta, Ga., Mulholland, Hickey & Lyman, Washington, D.C., of counsel), for appellants Brotherhood of Railway and Steamship Clerks, and others.
 John B. Miller, Julian C. Sipple, Savannah, Ga., B. D. Murphy, Atlanta, Ga., Charles J. Bloch, Macon, Ga., Edgar A. Neely, Jr., Atlanta, Ga., Ellsworth Hall, Jr., Macon, Ga., (W. Graham Claytor, Jr., Covington & Burling, Washington, D.C., of counsel), for appellees.
 Before TUTTLE, Chief Judge, BELL, Circuit Judge, and WHITEHURST, District Judge.
 TUTTLE, Chief Judge.
 
 
 1
 This is a companion case to No. 21,016, Switchmen's Union of North America v. Central of Georgia Railway Company and Southern Railway Company, 341 F.2d 213.
 
 
 2
 The parties to this appeal, in addition to the named Brotherhood, are the International Association of Machinists, the Railroad Yardmasters of America, the Sheet Metal Workers International Association, the International Brotherhood of Electrical Workers, and the Brotherhood of Railway Carmen of America, all of whom together with the named appellant will be called the Employee Organizations. The Employee Organizations filed a complaint out of which grew the order appealed from, seeking an injunction against the two railroad companies which the appellants claimed effected unilateral changes in working conditions in violation of Section 2, First, Section 2, Seventh and Section 6 of the Railway Labor Act, 45 U.S.C.A. 152, First, 152, Seventh and 156, and in violation of agreements between the Employee Organizations and the railroads.
 
 
 3
 The specific conduct complained of was that, following the issuing by the Interstate Commerce Commission of an order approving the acquisition by the Southern Railway Company of the majority stock of the Central of Georgia Railway Company, 317 I.C.C. 577, the Central of Georgia, by bulletin, notified members of the Employee Organizations that effective immediately their jobs were taken over by the Southern Railway Company. Such of the employees as acquiesced in this procedure and continued in employment under the Southern Railway Company were placed at the bottom of the seniority list of all Southern employees.
 
 
 4
 Expressly disavowing any intention to attack the validity or effectiveness of the I.C.C. order, the Employee Organizations contended that the course of conduct was a violation of the order and, by reason of the fact that it interfered with existing agreements affecting rates of pay, rules or working conditions, such conduct was in violation of section 6 of the Railway Labor Act which provides for written notice of an intended change in agreements affecting rates of pay, rules or working conditions and provides for negotiations leading finally to the Mediation Board.
 
 
 5
 One of the specific rights which the Employee Organizations claimed was in effect at the time of the unilateral conduct by the carriers was the contract known as the Washington Agreement, under the terms of which no coordination of facilities such as was sought to be effected here could be carried into effect without notice and an opportunity for negotiation on the part of the Employee Organizations. The appellee carriers contended that the security provisions contained in the Interstate Commerce Commission order for the partial protection of displaced employees superseded the Washington Agreement and preempted the entire subject of employee protection. Thus, the trial court was faced with the problem of construing the Interstate Commerce Commission order to determine whether it had superseded the Washington Agreement.
 
 
 6
 In the meantime, following the filing of the suits here dealt with, these Employee Organizations, and others, filed a suit in the Eastern District of Virginia seeking to restrain the enforcement of the I.C.C. order until it should be amended by specifically including the provisions of the Washington Agreement. In that case, the three-judge district court determined that the order superseded the Washington Agreement for the period that the security provisions of the order remained effective and declined to restrain the enforcement of the order. Railway Labor Executives' Assn. v. United States, D.C., 226 F.Supp. 521. On appeal to the Supreme Court, this order was vacated and the Supreme Court directed the three-judge district court to remand the matter to the Interstate Commerce Commission with directions that the Commission 'amend its report and order as necessary to deal with appellant's request that Sections 4, 5 and 9 be included as protective conditions, specifically indicating why each of these provisions is either omitted or included.' Railway Labor Executives Ass'n v. United States, 85 S.Ct. 307.
 
 
 7
 It is thus apparent that the order relied upon by the appellee carriers in this case for their unilateral termination of the employees jobs for the Central and their transferring these employees to the rolls of the Southern has been remanded to the Interstate Commerce Commission for further action by the Commission. In view of the fact that appellants' rights may be determined by the action hereafter taken by the Commission in pursuit of the mandate from the Supreme Court, it would be inappropriate for this Court to dispose of this appeal on the merits. As we said in the Switchmen's Union of North America case, No. 21,016, supra, since the issues remaining in the case following further action by the Commission should first be submitted to the trial court for its consideration, we vacate the judgment of dismissal and remand the case to the trial court with directions that it retain the case pending further action by the Interstate Commerce Commission touching on the order and for further appropriate proceedings thereafter.
 
 
 8
 The judgment is reversed and the case is remanded.